1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

SOUTHERN DISTRICT OF CALIFORNIA

10
11

GREGORY L. FLETCHER
C-41111,

Plaintiff,

v.

C/O QUIN; C/O LOPEZ; SERGEANT
STRICLAND; C/O ROMERO; C/O
GALVAN; C/O GRISSON; C/O
SORRANNO; CAPTAIN SANCHEZ,

Defendants.

12
13
14
15
16
17
18
19
20
21

Case No.:  3:15-cv-02156-GPC-NLS

**ORDER ADOPTING REPORT AND RECOMMENDATION:**

**[Dkt. No. 25]**

**(1) GRANTING DEFENDANTS' MOTION TO DISMISS;**

**[Dkt. No. 22]**

**(2) EXTENDING THE TIME TO EFFECT SERVICE UNDER FED R. CIV. P. 4(m)**

22

## INTRODUCTION

23

Plaintiff Gregory Fletcher, an inmate proceeding *pro se* and *in forma pauperis*,

24

filed this civil rights action pursuant to 42 U.S.C. § 1983.  Defendants G. Galvan

25

("Galvan") and F. Quinn[1] ("Quinn") filed a Motion to Dismiss under Fed. R. Civ. P.

26
27
28

[1] The Court observes that Defendant Quinn is also referred to as "Quin" in the case caption and in Plaintiff's submissions to the Court.

1

12(b)(6).[2]  Plaintiff did not file an Opposition.  Pursuant to 28 U.S.C. § 636(b)(1), United States Magistrate Judge Nita L. Stormes filed a Report and Recommendation granting Defendants' motion to dismiss with leave to amend and granting Plaintiff an extension of time to effect service.  Neither party filed an objection to the Report and Recommendation.

Based on the reasoning below, the Court **ADOPTS** the Magistrate Judge's Report and Recommendation.

## PROCEDURAL BACKGROUND

On September 24, 2015, Plaintiff filed a complaint against a number of prison officials employed at the Richard J. Donovan Correctional Facility ("RJD") in San Diego, California.  Dkt. No. 1.  On October 26, 2015, the Court dismissed the complaint without prejudice for failure to pay filing fees.  Dkt. No. 4.  On December 8, 2015, Plaintiff filed a first amended complaint ("FAC"), and on December 28, 2015, Plaintiff filed a motion to proceed *in forma pauperis*.  Dkt. No. 6 & 8.  The Court granted Plaintiff's motion to proceed *in forma pauperis* and directed the U.S. Marshal to effect service on Plaintiff's behalf.  Dkt. No. 11.

The FAC alleges that Defendants violated Plaintiff's (1) Eighth Amendment right to be free from cruel and unusual punishment and (2) First Amendment rights to freedom of association, free speech, and freedom of religion.  FAC, Dkt. No. 6.  On June 20, 2016, Defendants filed a motion to dismiss Defendants Galvan and Quinn.  Dkt. No. 22.  Plaintiff filed no opposition.  On July 7, 2016, Magistrate Judge Stormes filed a Report and Recommendation granting Defendants' motion with leave to amend.  Report and Recommendation (R&R), Dkt. No. 25.  The Report and Recommendation also granted Plaintiff an extension of time to effect service as a number of the individuals identified as defendants have yet to receive service.

---

[2] Hereafter, all references to "Defendants" will refer solely to Galvan and Quinn as they are the only Defendants who moved to dismiss.

## **STANDARD OF REVIEW**

In reviewing a Magistrate Judge's Report and Recommendation, "[a] judge of the court shall make a de novo determination of those portions of the report . . . to which objection is made."  28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b); *United States v. Remsing*, 874 F.2d 614, 617 (9th Cir. 1989).  However, in the absence of timely objection, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  Fed. R. Civ. P. 72 advisory committee's notes.  When no objections are filed, a district court may assume the correctness of the magistrate judge's findings and recommendations, and decide the motion on the applicable law.  *Campbell v. U.S. Dist. Court*, 501 F.2d 196, 206 (9th Cir. 1974); *Johnson v. Nelson*, 142 F. Supp. 2d 1215, 1217 (S.D. Cal. 2001).

## **FACTUAL ALLEGATIONS**

Plaintiff met with a woman from the Attorney General's Office on September 9, 2014.  FAC, Dkt. No. 6 at 3.  Later that day an unidentified inmate told Officer Romero, a correctional officer, that Plaintiff had spoken to the Attorney General's Office about the inmate and Romero.  *Id.*  At an undisclosed later time, Romero pushed Plaintiff in his chest seven to eight times.  *Id.*  Thereafter, when Plaintiff returned to his cell, he noticed that his space was "tore up."  *Id.*  He attempted to leave his unit and to speak with a superior about what had happened, but Officer Grisson, also a correctional officer, blocked him from doing so.  *Id.*  At that point, Officer Romero shoved Plaintiff back into his cell and punched Plaintiff in his chest.  *Id.*  Romero punched Plaintiff so hard that he re-broke his thumb trying to catch his fall.  *Id.*  Plaintiff then asked Officers Grisson and Romero for medical help, but they refused.  *Id.*  ("I told c/o Romero and c/o Grisson that I need medical help, they told me, that they didn't care if I died and that I will not get no help").  The officers then proceeded to tell Plaintiff that he did not know who he was "messing" with and that "no-one [sic] mess with him, Grisson, Galvan, Sorreano."  *Id.*  According to Plaintiff, all of these officers were part of the "Greenwall Officer Mafia

Group" and were dangerous, corrupt, and responsible for covering up murders, beatings, and more. *Id.*

On September 5, 2015, Plaintiff had an encounter with Officer Lopez, another correctional officer. *Id.* at 4. Allegedly, Lopez "set [Plaintiff] up with morphine pills" and, at some point, had Plaintiff undress and bend over for Lopez. *Id.* Lopez then placed his hands on Plaintiff's waist and said "um, that's nice." *Id.* Lopez then began to stalk Plaintiff for months, sexually harass, sexually assault, and sexually batter him. *Id.* At one point Plaintiff told Officer Lopez that his hands, feet, and back were hurting badly, but Lopez refused to provide Plaintiff with any medical attention. *Id.* Officer Lopez told medical staff that they should "let him [Plaintiff] suffer, he anit [sic] shit, we want him dead and we will get him one day, he will died [sic], neglect all his medical care." *Id.* Lopez then proceeded to get Officer Stricland, also a correctional officer, involved in the dispute by asking him (Stricland) to "back him [Lopez] up" by writing a memo. *Id.*

Finally, at an undisclosed time, Plaintiff states that Captain Sanchez, another correctional officer, locked him up for no reason and verbally abused him in order to "keep [him] from talking to anyone." *Id.* at 5. Lopez allegedly told Plaintiff that she did not care about his religion and that he did not have the right to speak. *Id.* Plaintiff alleged that Lopez said these things because he filed a writ of habeas corpus with the "U.S. State Supreme Court" that included allegations concerning conspiracy to commit murder, killings, set ups, and sexual *quid pro quo*. *See id.* Plaintiff goes on to add that Captain Sanchez, Lieutenant Williams, and Officer Quinn "all wanted [him] dead" and that Captain Sanchez wanted someone to set Plaintiff up because she is corrupt and part of the RJD Greenwall Officer Mafia Group. *See id.*

## LEGAL STANDARD

Every complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Accordingly, prior to filing a responsive pleading, a party may request by motion that the court dismiss an opposing party's complaint because it failed "to state a claim upon which relief can be granted."

Fed R. Civ. P. 12(b)(6).  In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Complaints do "not require 'detailed factual allegations,'" but must contain more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" to survive a motion to dismiss.  *Ashcroft*, 556 U.S. at 678.  "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.  If the court can only infer "the mere possibility of misconduct" from the pleaded facts, the complaint falls short of meeting the plausibility standard.  *Id.*; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (2009) ("[T]o survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief.")

As Plaintiff is an inmate proceeding *pro se*, "his complaint must be held to less stringent standards than formal pleadings drafted by lawyers."  *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (internal quotations omitted).  Courts, therefore, must "construe the pleadings [of *pro se* litigants ] liberally."  *Id*.  Nonetheless, "vague and conclusory allegations of official participation in civil rights violations are not sufficient to state a claim."  *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).  The Plaintiff must still plead at least "enough facts to state a claim to relief that is plausible on its face."  *Hebbe*, 627 F.3d at 342.

## DISCUSSION

Defendants Quinn and Galvan argue that they should be dismissed from Plaintiff's suit because the FAC does not allege that either of them were personally involved in any of the events that allegedly violated Plaintiff's constitutional rights.  *See generally*, Dkt. No. 22-1 at 4.  The Report and Recommendation agreed and concluded that Plaintiff's FAC failed to state a cause of action against either Defendant.  *See generally* Dkt. No. 25.

After having reviewed the Magistrate Judge's proposed findings and conclusions, the Court agrees that Defendants' motion to dismiss should be granted as to Quinn and Galvan because Plaintiff has failed to state an Eighth or First Amendment claim against either Defendant.

**A. Eighth Amendment Violation under § 1983**

An official that "subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution" is personally liable for that violation. 42 U.S.C. § 1983. Because "[b]eing violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society," "[a] prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828, 834 (1994) (internal quotations omitted). Any prisoner challenging official conduct, therefore, must satisfy two requirements: (1) that the deprivation suffered is objectively, sufficiently serious and (2) that the official has a sufficiently culpable state of mind to implicate the Eighth Amendment's protection against the "unnecessary and wanton infliction of pain." *Id.* at 834. Prison officials act with "deliberate indifference" if they act, or fail to act, despite knowing that a substantial risk of serious harm threatens the plaintiff-inmate. *Id.* at 841; *see also Solis v. Cnty. of Los Angeles*, 514 F.3d 946, 957 (9th Cir. 2008).

Only "deliberate indifference" that actually causes an inmate's injuries is actionable under § 1983. *See Clem v. Lomeli*, 566 F.3d 1177, 1182 (9th Cir. 2009) "Personal participation by the prison official" in the challenged event is one way to establish that an official subjected a prisoner to a deprivation of their rights. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989)). Additionally, a plaintiff can also establish causation by showing that the defendant "set[ ] in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *See Dahlia v. Rodriquez*, 735 F.3d 1060, 1078 n.22 (9th Cir. 2013) (internal citations omitted).

### 1.  Analysis

The FAC fails to state an Eighth Amendment claim against Galvan or Quinn because Plaintiff has failed to demonstrate that either Defendant acted with "deliberate indifference" to Plaintiff's medical needs, as is required under the second prong of the *Farmer* test, or that the Defendant's actions or failures to act caused his injuries.[5]  As the Report and Recommendation discussed, the FAC does not set forth any factual allegations from which the Court can reasonably infer that either Defendant acted with deliberate indifference to Plaintiff's medical needs.

Plaintiff's only allegations against Officer Galvan are (1) that Officer Romero told Plaintiff that he should not mess with Officer Galvan, among others, and (2) that Officer Galvan is part of the "Greenwall Officer Mafia Group," which is a dangerous and corrupt group that has covered up murders, beatings, and other crimes.  *See* FAC, Dkt. No. 6 at 3. The Court agrees with the Magistrate Judge that these conclusory allegations regarding Galvan's allegiances, corruption, and participation in the Greenwall Officer Mafia Group, "without further factual basis is insufficient to state a claim for relief" under the standards of *Ashcroft* and *Twombly*.  R&R, Dkt. No. 25 at 5.  The FAC is entirely devoid of any allegations showing that Officer Galvan personally participated in any assault upon Plaintiff or that he had knowledge that there was any risk of substantial harm to Plaintiff. The Court further notes that it is also not enough to simply assert that Officer Galvan is a member of a group that may have acted with deliberate indifference towards Plaintiff, because group liability is an improper alternative ground for liability.  *See Chuman v. Wright*, 76 F.3d 292, 295 (9th Cir. 1996) (finding that a team effort theory of liability is improper because the it "allows the jury to lump all the defendants together, rather than require it to base each individual's liability on his own conduct.");  *see also Leer v.*

---

[5] If taken as true, Plaintiff's allegations would arguably be sufficient to demonstrate that he suffered an objectively serious injury under the first prong of *Farmer*.  However, because Plaintiff's claims are insufficient under the second prong of *Farmer* and to demonstrate causation, the Court need not address this point.

*Murphy*, 844 F.2d 628, 634 (9th Cir. 1988) ("the prisoner must set forth specific facts as to each individual defendant's deliberate indifference."). Accordingly, the Court concludes that Plaintiff has failed to state an Eighth Amendment failure-to-protect claim against Defendant Galvan.

Plaintiff's allegations against Officer Quinn are similarly insufficient to state a claim for relief. The FAC alleges that Officer Quinn, along with Captain Sanchez, Lieutenant Williams, wanted him dead. FAC, Dkt. No. 6 at 5. Yet threats alone do not violate the Eighth Amendment. *See Gaut v. Sunn*, 810 F.2d 923, 925 (9th Cir. 1987) ("We find no case that squarely holds a threat to do an act prohibited by the Constitution is equivalent to doing the act itself"); *see also Babcock v. Clarke*, 373 F. App'x 720, 722 (9th Cir. 2010). Rather, the official must actually participate in, or "set[ ] in motion a series of acts by others" that leads to, the act that violates the prisoner's Eighth Amendment rights. *See Dahlia*, 735 F.3d at 1078. Plaintiff, however, has failed to allege that Quinn was personally involved in any deprivation of Plaintiff's rights or that he had knowledge of any substantial risk of harm that Plaintiff faced. Accordingly, Plaintiff has failed to state a cognizable Eighth Amendment claim against Defendant Quinn.

**B. First Amendment Violation under § 1983.**

**1. Freedom of Speech**

In order to prove a retaliation claim in the prison context, a Plaintiff must demonstrate that (1) a state actor took adverse action against him or her (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights and (5) the action did not reasonably advance a legitimate correctional goal. *Rhodes v. Robinson,* 408 F.3d 559, 567-68 (9th Cir. 2005). At the pleading stage, the Plaintiff is not required to "demonstrate a total chilling of his First Amendment rights to file grievances and to pursue civil rights litigation in order to perfect a retaliation claim." *Id.* at 568 (emphasis omitted). Rather, he only has to "show that the defendant 'intended to interfere' with the plaintiff's First Amendment rights." *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 867 (9th Cir. 2016).

1    As the Magistrate Judge noted, it is not clear from the face of the complaint

2  whether Plaintiff is asserting a First Amendment claim against Quinn.[6]  This lack of

3  clarity prevents the Court from concluding that Plaintiff's allegations state a claim against

4  Defendant Quinn.  Plaintiff alleged that Captain Sanchez locked him up and told him not

5  to speak to anyone "all because, [he] sent the U.S. State Supreme Court a writ of habeas

6  corpus."  FAC, Dkt. No. 6 at 5.  By filing a writ of habeas corpus with the "U.S. State

7  Supreme Court," Plaintiff arguably engaged in protected conduct.  The FAC, however,

8  fails to establish any of the remaining elements of a retaliation claim as to Quinn.  In

9  order to state a claim against Quinn, Plaintiff had to demonstrate that Quinn took adverse

10  action against him, because of that protected conduct, without a legitimate correctional

11  goal, and with the intention of interfering with Plaintiff's First Amendment rights.  Yet

12  the only allegation lodged against Officer Quinn is that he "wanted [Plaintiff] dead."  *Id.*

13  Even recognizing that "the mere threat of harm *can be* an adverse action, regardless of

14  whether it is carried out because the threat itself can have a chilling effect," *Brodheim v.*

15  *Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009) (emphasis added), Plaintiff's claim still fails.

16  The FAC offers no facts demonstrating that Quinn ever communicated any threat to

17  Plaintiff.  Plaintiff has also failed to plead that Quinn made any such threat because

18  Plaintiff had filed as habeas petition or that Quinn made such a threat with the intention

19  of chilling his right to file a habeas petition or some other protected act.  As such, even

20  construing the complaint liberally, the FAC does not contain enough facts for the Court

21  to conclude that there is a viable First Amendment retaliation claim against Quinn.

22    ////

23    ////

24    ////

---

[6] There is no reasonable basis for arguing that Plaintiff has stated a First Amendment claim against Defendant Galvan, as Galvan's name is not mentioned at all in Plaintiff's First Amendment allegations. *See* FAC, Dkt. No. 6 at 5.  Defendant Quinn, by contrast, is named in Count 3 of Plaintiff's complaint, which addresses the First Amendment claims.

### 2.  Right to free exercise & Right to freely associate

Plaintiff additionally alleges that Defendants violated his right to freely practice his religion and freely associate.[7]  FAC, Dkt. No. 6 at 5.  Inmates retain their First Amendment right to freely exercise religion.  *Henderson v. Terhune*, 379 F.3d 709, 712 (9th Cir. 2004).  Inmates also retain the right to freely associate, though the right is substantially curtailed for prisoners.  *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003) ("Freedom of association is among those rights least compatible with incarceration"); *Dunn v. Castro*, 621 F.3d 1196, 1201 (9th Cir. 2010)  ("prisoners do not enjoy an absolute right to receive visits while incarcerated.").  Here, however, Plaintiff has failed to state any viable freedom of religion or freedom to associate claim against Quinn. The only allegation speaking to these claims states that Captain Sanchez told Plaintiff "that she will don't care [sic] about my religion nor do I have the right to speak."  FAC, Dkt. No. 6 at 5.  This allegation, however, does not implicate Defendant Quinn in any way.  This allegation also fails to even indicate that any injury even occurred, as it is unclear whether Plaintiff was actually prevented from practicing his religion or speaking with others.  Accordingly, Plaintiff has failed to state a plausible, cognizable violation of Plaintiff's right to exercise his religion or his right to freely associate.

### C. Leave to Amend

The Magistrate Judge recommended granting Plaintiff leave to amend his complaint, as it was not "absolutely clear" that the deficiencies of the complaint could not be cured by amendment.  R&R, Dkt. No. 25 at 9 (citing *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995)).  The Court agrees.  "The court should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  The "rule favoring liberality in amendments to pleadings is particularly important for the pro se litigant."  *Lopez v.*

---

[7] Again, as was the case with the retaliation cause of action, it is unclear which individuals Plaintiff has implicated in these First Amendment claims besides for Captain Sanchez.  *See* Dkt. No. 6 at 5.  Because Defendant Quinn is named in count three of Plaintiff's FAC, which addresses these religious and speech violations, the Court will address these claims as to him only.

*Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (quotations omitted).  Thus, when a pleading can be cured by the allegations of other facts leave to amend is proper.  *Id.* at 1127.  The Court finds that Plaintiff may be able to remedy the defects in his complaint if he offers additional allegations as to Galvan and Quinn, connecting both officers to the Eighth and First Amendment violations.  Accordingly, the Court grants Plaintiff leave to amend his allegations as those Defendants.

**D.  Extension of Time to Effect Service**

On February 2, 2016, the Court approved Plaintiff's petition to proceed *in forma pauperis* and directed the U.S. Marshal to effect service of summons on the defendants. Dkt. No. 11 at 5.  To date, however, the only defendants who have been served are Quinn, Galvan, and Sanchez.  Dkt. Nos. 19-21.  The U.S. Marshal was unable to serve Grisson, Romero, Sorrano, Lopez, and Stricland/Stricklin[8] because the RJD litigation coordinator could not identify those individuals without their first initials.  Dkt. Nos. 13-18.  The time allotted to serve those five defendants expired on or about May 3, 2016.

Under Fed. R. Civ. P. 4(m), "[i]f a defendant is not served within 90 days after the complaint is filed, the court . . . must dismiss the action without prejudice against that defendant or order service be made within a specified time."  The Magistrate Judge took note of this problem, and (1) recommended that the Court provide the Plaintiff with an extension of time to serve the above-mentioned parties and (2) directed the Deputy Attorney General assigned to the case to liaison with the RJD litigation coordinator in order to provide the first initials of the unserved defendants to the U.S. Marshal.  R&R, Dkt. No. 25 at 10.

Rule 4(m) provides that a court may extend the time for service for an appropriate period if the plaintiff shows good cause for the failure.  Fed. R. Civ. P 4(m); *cf. Efaw v. Williams*, 473 F.3d 1038, 1041 (9th Cir. 2007) ("District courts have broad discretion to

---

[8] In a later submission filed with the Court, Plaintiff explained that "Stricklin" and "Strickland" are the same person.  Dkt. No. 24 at 2.

extend time for service under Rule 4(m).")  Plaintiff filed a document with the Court indicating that he did not provide the first initials of the various, un-served defendants because "none of those officers would give me or tell me their badge numbers nor their first initials."  Dkt. No. 24 at 2.  He has since attempted to identify each unserved defendant as best he could by providing, among other information, the buildings where those individuals work and their respective titles.  *See generally id.*  Accordingly, the Court finds that Plaintiff has demonstrated good cause for failing to effect service on those individuals.

"Attorneys, as officers of the court, have a duty to cooperate with the court to preserve and promote the efficient operation of our system of justice."  *Chapman v. Pac. Tel. & Tel. Co.*, 613 F.2d 193, 197 (9th Cir. 1979).  Given Plaintiff's good faith effort to identify the defendants and in the interest of judicial efficiency, the Court orders the Deputy Attorney General assigned to this case to contact the litigation coordinator at RJD and provide the coordinator with the description and identifying information contained in Plaintiff's letter (*see* Dkt. No. 24), for purposes of identifying the first initial of the five unserved defendants.  In the event that the litigation coordinator is able to identify the unserved defendants, the Court directs the Deputy Attorney General to provide the first initials of the unserved defendants to the U.S. Marshal in a confidential memorandum. The U.S. Marshal should then use that information to serve the summons and First Amended Complaint on the unserved defendants that have been identified.

## **CONCLUSION**

Based on the above, the Court **ADOPTS** the Report and Recommendation of the Magistrate Judge, and:

A. **GRANTS** Defendants' motion to dismiss for failure to state a claim with leave to amend.  Plaintiff must file any amended complaint, with additional allegations as to Defendants Galvan and Quinn, within sixty (60) days from the date of this order.

B.  **GRANTS** Plaintiff an additional ninety (90) days to serve the First Amended Complaint on the Defendants who never received service under Fed. R. Civ. P. 4(m); and

C.  **ORDERS** that the assigned Deputy Attorney General contact the litigation coordinator at RJD to attempt to identify the remaining, unserved defendants and take the additional steps set out above.

**IT IS SO ORDERED.**

Dated:  March 3, 2017

Hon. Gonzalo P. Curiel
United States District Judge